CHARLTON WHITE v. THE STATE.

No. 13520. Delivered January 7, 1931.
Reported in 34 S. W. (2d) 286.

The opinion states the case.

*E. J. Conn* of Lufkin, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

MORROW, Presiding Judge.—The offense is rape; penalty, confinement in the penitentiary for a period of thirty years.

From the testimony of the State, the following in substance appears: Mrs. Minnie Wood was thirty-one years of age and long a resident of the community. She had been married and was the mother of three children, the oldest being ten years old. After she had retired in the night, there came to her home Bob Lester, Dock Brown and Charlton White, the appellant. Against her will and while she was resisting, she was conducted by the persons named above to a place in the woods near her home. Upon threats made by Lester, she removed her dress and underclothes, and Lester had

sexual intercourse with her. She made outcry and her assailants departed. Lester alone indulged in the act of intercourse.

The appellant's theory, arising from his testimony and that of others, is illustrated by the following synopsis. He was twenty years of age and uneducated. He was requested by Lester to go to the home of the prosecutrix. He objected at first upon the ground that he was related to her but finally agreed to accompany Lester and Brown to the house in which the prosecutrix lived; that the prosecutrix went with Lester to the woods to fill a date but upon discovering the appellant, she made outcry and he departed.

The court instructed the jury upon the law of principals and embraced in paragraphs 8 and 9 the definition of the law of principals in substantial accord with the statutory provisions found in Chap. 1, Title 3, Rev. Cr. Stat., 1925, p. 12. The application of the law to the facts was embraced in paragraphs 11 and 12. The criticism of the court's charge embraced the proposition that there was a failure to properly apply the law of principals to the facts in hand. In attempting to make such application the jury was instructed in substance that the mere presence of the accused would not constitute him a principal, and in paragraph 11 of the charge the following language is used:

"Now, if you believe from the evidence, beyond a reasonable doubt, that the defendant, either alone or acting together with Dock Brown and Bob Lester, or either of them, as principals, as that term has hereinbefore been explained to you, did, as charged in the indictment, on or about the time alleged in the indictment, in the County of Angelina, and State of Texas, make an assault in and upon the said Minnie Wood, a woman, and that the said Bob Lester, did, then and there, by means of force and threats, violently ravish and have carnal knowledge of her, the said Minnie Wood, etc."

Without asserting that, considered as a whole, the charge of the court was defective to a degree that would require a reversal, it will be stated that in the particular mentioned the charge is not deemed accurate. If there be another trial, the jury should be instructed in such manner that they will understand that the appellant could not become a principal in the rape unless a rape was committed by Bob Lester, and in appropriate language the jury should be told that if they believed, beyond a reasonable doubt, that Minnie Wood was raped by Bob Lester, and the appellant being

present and knowing of the unlawful intent and purpose of Bob Lester, aided or encouraged him, he would be a principal offender.

Specific objection was made to the failure of the court to charge upon the law of aggravated assault. Such an instruction should have been given.

There is testimony from which the jury might have concluded that no rape or copulation took place during the presence of the accused. The evidence from his standpoint presents the theory that before going to the vicinity of the home of the prosecutrix, the appellant was aware that the prosecutrix had extended sexual favors to others and was informed by Lester that he had a date with the prosecutrix to have such intercourse with her consent; that on reaching her home the appellant's presence was not disclosed to her but he was near enough to hear a conversation with Lester in which the prosecutrix consented to go with him and Brown for the purpose of sexual relations; that appellant went into the woods and without compulsion by him the prosecutrix came with Lester and Brown to the woods and was making arrangement of her apparel and position for the act when she discovered the appellant's presence near a tree; that she immediately began to scream and the appellant left; that no act of intercourse took place in his presence. From the State's standpoint, the appellant was present and took part in bringing her against her will into the woods. It was within the province of the jury to accept a part of the testimony coming from each of the witnesses and to reject other parts thereof. Assuming the appellant's presence and knowledge that one or both of his companions had the intention of engaging in sexual relations with the prosecutrix, the issue of fact remains as to the intent with which he acted. On that subject, the following language of the Supreme Court in the case of Pefferling v. State, 40 Tex. Rep. 486, is pertinent:

"Obviously there is a manifest distinction *between an assault to commit rape,* and *an assault with an intent to have an improper connection.* Any such violent or indecent familiarity with the person of the female against her will, when the latter is the extent of the purpose and intent of the aggressor, is an aggravated assault, and should be punished as such. But whatever may be the cause, or brutally obscene character of the assault, if it appear from the evidence that it was not the object or intent of the aggressor to accomplish his desired purpose by force, against the will and without consent, then the mere aggravated offense has not been committed."

Of like import in its legal effect is the conclusion stated by this court in the following cases: Curry v. State, 4 Tex. Ct. App. 574; McGee v. State, 21 Tex. Ct. App. 670; Taylor v. State, 50 Tex. Cr. R. 362; Attaway v. State, 100 Tex. Cr. R. 92.

Bud Lester, a brother of Bob Lester, visited the scene of the alleged offense on the same night but some time after the occurrence. It was dark. He made no examination of the surroundings and could not have seen any signs of the struggle even if they had been there. He made a subsequent visit to the scene at a time when others who were State's witnesses were present. The only material fact that has been observed to which he gave testimony was to the effect that the general reputation of the prosecutrix for chastity was bad. Upon that subject there were many witnesses pro and con together with circumstances and specific acts. In rebuttal the State called the witness Henslee, a deputy sheriff, who testified that on the same night but some time after the alleged assault he saw Bud Lester at the Parker home and heard Mrs. Parker ask what had happened and Bud Lester replied that "they had dragged Minnie Wood out of her house and raped her." Charlton White, the appellant, was not present at the time. Objection was made to the statement quoted and a bill of exception reserved in which it appears that the objection was overruled. The court in qualifying the bill states that the testimony was admitted to impeach Bud Lester and the jury instructed that it could be used for impeachment only. We have perceived no predicate for the introduction of the statement as impeaching testimony; nor can we conceive, in the light of the record, of any predicate that would have rendered it admissible. It is difficult to perceive how the opinion of Bud Lester, who was not a participant but who arrived on the scene long after the alleged transaction upon which the offense is based had transpired, would properly become a matter to be proved against the appellant on trial, and would render the impeachment admissible. His opinion would not be material, though the nature of the declaration going directly to show the guilt of the accused cannot be regarded as harmless.

No objection appears to have been made to the trial before a special judge. It is now contended that the verdict is vitiated for the reason that prior to the election of the special judge who tried the case another special judge had been elected and qualified. It seems that it is the appellant's contention that the absence of the regular judge would permit the election of a special judge but that

after his election, though he be absent, another special judge could not be elected. In the bill of exception certain facts are brought up, and from the facts which are made a part of the bill it is by no means made clear that there was any irregularity in the selection of the special judge who tried the case. It has been held by the civil courts that the same conditions which would authorize the election of a special judge in the first instance in the absence of the regular judge would, in the absence of a special judge, have a like effect. See Honse v. Ford, 258 S. W. 527; Cobb & Gregory v. Parker, 242 S. W. 1018. Ordinarily, where a special judge is elected and the record appears regular, he is treated as a judge de facto even though the facts aliunde the record might disclose some irregularities. See Ency. of Law & Proc., Vol. 23, p. 616. In the present instance, it is not made clear that there was no reason recognized by the Constitution for the selection of a special judge, nor that his election was otherwise irregular. Moreover, the right given by the Constitution to litigants to agree upon a special judge might operate as a waiver of any irregularity in the election where the parties proceed to trial and verdict without objection. See Schultze v. McLeary, 73 Tex. Rep. 92.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*